IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUWLUS A. MUHAMMAD,<br>   Petitioner,<br><br>   v.<br><br>KENNETH R. CAMERON,<br>et al.,<br>   Respondents. | Civil Action No. 10-34 Erie<br><br>District Judge Sean J. McLaughlin<br>Magistrate Judge Susan Paradise Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus, as amended, be denied and that a certificate of appealability be denied.

### II. REPORT

On July 11, 2007, an Erie County jury at Criminal Docket No. CP-25-CR-0000232-2007 found Petitioner, Buwlus A. Muhammad, a/k/a Paul Cooper, guilty of two counts of aggravated assault, three counts of simple assault, and one count of recklessly endangering another person. The trial court also found him guilty of three counts of harassment (summary offenses). On August 27, 2007 (as amended by a subsequent order on February 4, 2008) the court imposed an aggregate sentence of 92-184 months incarceration. Petitioner now raises the following claims for federal habeas relief:

  **Claim 1**  The trial court lacked "primary custody" or "primary jurisdiction" over him;

  **Claim 2**  His constitutional rights were violated because: (a) he was tried while incompetent; and, (b) his pre-trial/stand-by counsel was ineffective for failing to investigate evidence of his mental health and request an evaluation for competency;

1

| | | |
|---|---|---|
| **Claim 3** | | "use of government powers and authority to commit fraud … the certified records and trial evidence discovered and established that the Erie County Prison officials falsified incident reports, and fabricated evidence [and] in doing so withheld exculpatory evidence to facilitate criminal prosecution"; |
| **Claim 4** | | The evidence was insufficient to support the verdicts; and, |
| **Claim 5** | | His sentence was excessive. |

[Petition, ECF No. 3; Amendment to Petition, ECF No. 9; Brief In Support Of Petition, ECF No. 21].

### A.     Relevant Background[1]

The trial court summarized the facts of this case as follows:

On August 17, 2006, the defendant was incarcerated at the Erie County Prison in the maximum-security housing unit, known as the "F-pod." The general housing unit is separated from the F-pod by walls, glass windows, and a locked door. The F-pod consists of inmate cells and a "dayroom." The dayroom is a general area for the F-pod prisoners. Located within the dayroom are tables, chairs and the officer duty station.

At approximately 9:30 p.m., Correction Officers Shawn Bolt and Brian Ames were the supervising officers of the F-pod. While both officers were located at the officer duty station, Officer Bolt issued the defendant a minor misconduct violation. The defendant became angry and grew very loud and argumentative with Officer Bolt. At one point the defendant started to walk away and asked Officer Ames if he had to lock up [go into his cell] immediately, to which Officer Bolt replied no. The defendant then started swearing, exclaimed he was not going to lock up, picked up a chair, and flung it at the duty station where Officers Bolt and Ames were seated. The chair hit the front of the duty desk. Officer Ames stood up and gave a clear and direct order to the defendant to lock up. The defendant refused…. Officer Ames started to walk around the duty station and continued to give the defendant orders to lock up. The defendant did not obey. Officer Ames began to move towards the defendant. When Officer Ames was approximately ten feet away from the defendant, the defendant picked up another chair and threw it. The chair struck Officer Ames in his shoulder, head and neck area causing him to experience pain in his shoulder and neck. Officer Bolt then placed an all-available officer call to the F-pod.

---

[1]     Respondents have submitted the Court of Common Pleas' file. The documents contained in that court's file are numbered 1 through 92 and shall be cited to as "CP Dkt. No. __ ." The Superior Court of Pennsylvania issued a relevant decision after Respondents had submitted the state court record and filed their Answer. This Court has obtained that unpublished decision from the Superior Court's prothonotary's office and it is attached hereto as Exhibit A.

> After being struck with a chair, Officer Ames continued to approach the defendant and ordered the defendant to lock up or get on the ground. Officer Ames then tripped over the second chair that was thrown and as a result he fell to the ground. The defendant picked up a third chair and began to swing it in the direction of Officer Ames. Officer Ames got to his feet and had to deflect one of the blows from the chair with his arm. Officer Ames attempted to pry the chair away from the defendant with the use of another chair. In the process, Officer Ames was struck in the face and back. The defendant dropped the chair in his hands, fell to the floor and rolled towards Officer Ames and kicked Officer Ames on the side of his left leg. The defendant scrambled to his feet and struck Officer Ames with a closed fist. This altercation took approximately four seconds, during which Officer Ames continued to give verbal orders to the defendant, which the defendant refused to obey.
>
> The first two officers to respond to the all-available officer call to the F-pod were Corrections Officer Ronald Pilarski and Sergeant Mark Olowin. As the officers approached the F-pod door, through a window they observed the defendant swinging a closed fist at Officer Ames. The F-pod door was initially locked until Sergeant Olowin overrode the lock. Upon entering the F-pod, both officers approached the defendant and gave orders to him to cease fighting and get to the ground. The defendant refused to obey the orders. Once Sergeant Olowin reached the defendant he physically took him to the ground to restrain him. Officer Ames retreated once the defendant was taken to [the] ground. The defendant continued to fight and resist as Officer Pilarski and Sergeant Olowin tried to restrain him with handcuffs. The defendant tucked his arms underneath himself and threw his head back and forth. The defendant was finally restrained and handcuffed and taken to the prison's gymnasium where he was placed in a restraining chair and examined by a nurse.
>
> During the incident, three corrections officers sustained injuries: Corrections Officer Brian Ames, Sergeant Mark Olowin, and Corrections Officer Ronald Pilarski. Each officer was examined by the prison's nurse and then sent to Hamot Medical Center for treatment.

(CP Dkt. No. 75, Commonwealth v. Muhammad, No. 232 of 2007, slip op. at 6-8 (C.P. Erie Feb. 4, 2008) (internal citations omitted)).

The Commonwealth filed numerous charges against Petitioner in connection with the above-described incident. The court appointed Garrett Taylor, Esq., to represent him. Petitioner subsequently filed a motion for dismissal of counsel. Following a hearing with argument and a colloquy, the court granted Petitioner's motion by way of an Order dated May 9, 2007, to the extent that Attorney Taylor would act as standby counsel. (Id. at 1 n.1).

3

Petitioner's trial was held in July 2007, and he was sentenced in August 2007. He challenged his judgment of sentence in a direct appeal to the Superior Court. He raised 22 claims of error. (Id. at 4-5 (listing Petitioner's direct appeal claims)). Among the many claims raised where those listed above as Claim 2(a) (tried while incompetent); Claim 4 (insufficient evidence to support the verdicts); and, Claim 5 (the sentence was excessive).

On February 4, 2008, the trial court issued a 22-page Memorandum in which it explained why Petitioner's claims had no merit and his judgment of sentence should be affirmed. On December 31, 2008, the Superior Court issued a Memorandum in which it adopted the trial court's "thorough and well-reasoned" decision in its entirety and affirmed Petitioner's judgment of sentence. (CP Dkt. No. 81, Commonwealth v. Muhammad, No. 1704 WDA 2007, slip op. (Pa. Super. Dec. 13, 2008)). On September 30, 2009, the Pennsylvania Supreme Court denied a petition for allowance of appeal. (CP Dkt. No. 79).

On or around October 28, 2009, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (CP Dkt. No. 80). He raised the same issue that he raises in Claim 1 (the Commonwealth lacked "primary jurisdiction" to prosecute him), but raised it within the context of an ineffective assistance of counsel claim (that Attorney Taylor should have moved to quash the charges against him). He also raised the same allegations of prosecutorial misconduct that he makes in Claim 3, but once again raised them within a broad claim that Taylor was ineffective for not objecting to the alleged misconduct. Petitioner also raised the allegation that he raises in Claim 2(b) that Taylor was ineffective for permitting him to be tried while incompetent.

The PCRA Court appointed William J. Hathaway Esq., to represent Petitioner. On December 23, 2009, Hathaway filed a "no-merit" letter and an accompanying petition to withdraw as counsel in which he explained that in his opinion Petitioner had failed to assert any colorable claim for post-

4

conviction relief. (CP Dkt. No. 83). The PCRA Court permitted Hathaway to withdraw and then issued a Notice Of Intent To Dismiss (CP Dkt. No. 85), to which Petitioner filed objections (CP Dkt. No. 86). On February 22, 2010, the court issued an Order in which it denied the PCRA petition. (CP Dkt. No. 89).

Petitioner filed a *pro se* appeal with the Superior Court. On October 19, 2010, the Superior Court issued a Memorandum in which it affirmed the denial of PCRA relief. Commonwealth v. Muhammad, No. 491 WDA 2010, slip op. (Pa.Super. Oct. 19, 2010) (attached as Ex. A). Although it agreed with the PCRA Court's decision, it affirmed on the basis that the deficiencies in Petitioner's appellate brief resulted in the waiver of all issues. Id. at 1-2. It explained:

> In his *pro se* brief filed with this Court, Appellant does not include a statement of the questions involved, as mandated by Pa.R.A.P. 2111(a)(4). "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116. Because Appellant has not identified any question for this Court to consider, there is nothing for this Court to review. Appellant's *pro se* status does not salvage his appeal.
>
>> While this Court is willing to liberally construe materials filed by a *pro se* litigant, we note that Appellant is not entitled to any particular advantage because [he] lacks legal training. As our Supreme Court has explained, "any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing."
>>
>> Consequently, [w]e decline to become the appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof.
>
> Commonwealth v. Greenwalt, 796 A.2d 996, 997 (Pa.Super. 2002) (quoting Commonwealth v. Rivera, 685 A.2d 1011, 1013 (Pa.Super. 1996)).

Id. at 5.

Petitioner subsequently filed a motion with the Superior Court for an extension of time to file an application for reargument, which the court granted. However, on December 6, 2010, he filed an

5

application for discontinuance. Accordingly, on December 21, 2010, the Superior Court issued an Order in which it discontinued the appeal and closed the case. See Appeal Docket Sheet for Commonwealth v. Muhammad, No. 491 WDA 2010 (available online at <http://ujsportal.pacourts.us/>).

In the meantime, Petitioner had commenced proceedings in this Court by filing the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is the federal habeas statute applicable to state prisoners. [ECF No. 3]. Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his rights under the United States Constitution. 28 U.S.C. § 2254(a).[2]

Respondents have filed their Answer [ECF No. 17] and the state court record. They have also filed a motion to quash [ECF No. 23], in which they assert that the Court lacks subject matter jurisdiction and must dismiss the case because it is an unlawful second or successive habeas petition for which Petitioner failed to receive authorization to file. See 28 U.S.C. § 2244(b). Petitioner has filed a motion to dismiss Respondents' motion to quash. [ECF No. 27].

### B. Discussion

#### 1. Respondents' Motion To Quash Must Be Denied

Respondents contend that the instant petition is an unlawful second or successive petition because it is subject to the authorization requirements set out at 28 U.S.C. § 2244(b), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which Petitioner did not fulfill. They are wrong.

---

[2] Section 2254(a) provides that a district shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (Emphasis added). There are no applicable federal statutes or treaties.

6

It is true that this Court previously disposed of a federal habeas petition filed by Petitioner. That petition, however, challenged a different judgment of sentence than that which is at issue in the instant case. Specifically, in February of 2007, Petitioner filed a petition for writ of habeas corpus with this Court in which he challenged the judgment of sentence imposed at the Court of Common Pleas' Criminal Docket CP-25-CR-000303-2004 for his conviction of making terroristic threats. That petition was docketed as <u>Buwlus A. Muhammad, a/k/a Paul Cooper, v. Kannrine, et al.</u>, Civil Action No. 07-22 (Erie), assigned to the Honorable Sean J. McLaughlin, and referred to the undersigned. On April 3, 2009, the Court issued a Memorandum Order in which it, upon the undersigned's Report and Recommendation, denied the petition and denied a certificate of appealability. Petitioner then filed an application for a certificate of appealability with the U.S. Court of Appeals for the Third Circuit, which was denied on June 25, 2009.

In 2010, Petitioner filed another federal habeas petition with this Court in which he once again challenged the state judgment of sentence imposed at Criminal Docket CP-25-CR-000303-2004. That case was docketed as <u>Buwlus A. Muhammad a/k/a Paul Cooper v. Cameron, et al.</u>, Civil Action No. 10-33, assigned to Judge McLaughlin, and referred to the undersigned. On December 28, 2010, the Court issued a Memorandum Order in which it, upon the undersigned's Report and Recommendation, dismissed the case because the petition was an unlawful second or successive petition. Petitioner then filed an application with the Third Circuit Court to file a second or successive petition challenging his judgment of sentence at CP-25-CR-000303-2004, which that court denied in an Order dated February 17, 2011. <u>See</u> Appellate Docket Sheet for <u>In re: Buwlus Muhammad v. Kannrine, et al.</u>, No. 11-1114 (3d Cir.).

Petitioner could not have raised the claims contained in the instant petition in the habeas petition he filed with this Court in February 2007 at Civil Action No. 07-22. That federal habeas case was

regarding a separate and earlier state judgment of sentence. At the time Petitioner filed that case, the Commonwealth had not yet tried him for the crimes at issue in this action, as the trial in Criminal Docket No. CP-25-CR-0000232-2007 was held in July 2007. Moreover, Petitioner's judgment of sentence at issue in this case was not final until December 2009, several months after this Court had denied the habeas petition filed at Civil Action No. 07-22 and closed that case. As the Third Circuit Court has explained:

> "[A] prisoner's application is not second or successive simply because it follows an earlier federal petition." In re Cain, 137 F.3d [234,] 235 [(5th Cir. 1998)]. The doctrine does, however, bar claims that could have been raised in an earlier habeas corpus petition. McCleskey v. Zant, 499 U.S. [467,] 493-95 [(1991)]; Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992)]. Thus, a subsequent petition that challenges the administration of a sentence is clearly not a "second or successive" petition within the meaning of § 2244 if the claim had not arisen or could not have been raised at the time of the prior petition. See Singleton v. Norris, 319 F.3d 1018, 1023 (8th Cir. 2003); Medberry v. Crosby, 351 F.3d 1049, 1062 (11th Cir. 2003); Hill v. Alaska, 297 F.3d 895, 898 (9th Cir. 2002); In re Cain, 137 F.3d at 236

Benchoff v. Colleran, 404 F.3d 812, 817 (3d Cir. 2005).

Accordingly, Respondents' motion to quash [ECF No. 23] must be denied. The Court has jurisdiction over this case and may proceed to review the petition. Petitioner's motion in which he seeks to quash Respondents' motion [ECF No. 27] should be dismissed as moot.

### 2. Claims 1, 2(b), and 3 Are Procedurally Defaulted

As set forth above, at Claims 1, 2(b) and 3, Petitioner is raising issues that he raised in his PCRA proceeding. Because he failed to list them in his appellate brief in his "Statement Of the Questions Involved" in accordance with Rule 2111 of the Pennsylvania Rule of Appellate Procedure, the Superior Court deemed them waived pursuant to Rule 2116 ("No question will be considered unless it is stated in the statement of questions involved[.]").

The procedural default doctrine is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and it bars federal habeas review where, as the case here, the petitioner has failed to comply with the state's procedural rules when raising the claim at issue before the state courts, whether this failure occurred at trial, on appeal, or during post-conviction review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985). That is the case here, since the Superior Court's decision was based on the application of Pa.R.A.P. 2111 and 2116. A state rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). See also Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007) (a state rule is adequate when a state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule and the state court's refusal was consistent with other decisions). Importantly, as the U.S. Supreme Court recently held:

> [A] discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine. To the contrary, a discretionary rule can be "firmly established" and "regularly followed" – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L.Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").
>
> A contrary holding would pose an unnecessary dilemma for the States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at

the cost of undermining the finality of state court judgments. Or States could preserve
the finality of their judgments by withholding such discretion, but only at the cost of
precluding any flexibility in applying the rules.

Beard v. Kindler, — U.S. —, 130 S.Ct. 612, 618 (2009). The state rules at issue here qualify as "adequate" because, although it appears they are discretionary, they were firmly established and regularly followed in non-capital cases at the time Petitioner's default occurred. See, e.g., Greenwalt, 796 A.2d at 997; Commonwealth v. Poplawski, 852 A.2d 323, 326 n.3 (Pa. Super. 2004); Commonwealth v. Jarowecki, 923 A.2d 425, 428 (Pa.Super. 2007), reversed on other grounds, 985 A.2d 955 (Pa. 2009); Commonwealth v. Adrulewicz, 911 A.2d 162, 164 n.7 (Pa.Super. 2006); Smathers v. Smathers, 670 A.2d 1159, 1160-61 (Pa.Super. 1996).

A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).[3] Petitioner has not established either factor.[4]

---

[3] As the Third Circuit Court has stated:

Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." [Murray v. Carrier, 477 U.S. at 486]. Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002).

[4] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in

Accordingly, based upon all of the foregoing, Claims 1, 2(b) and 3 must be denied because they are procedurally defaulted.

### 3. Claims 2(a) and 4 Have No Merit

#### (a) Standard Of Review

In Claim 2(a), Petitioner contends that he was denied his due process rights because he was tried while incompetent. In Claim 4, he contends that there was insufficient evidence to support the verdicts. Because the state court denied each of these claims on the merits, this Court's analysis of them is governed by the AEDPA's standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

---

extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to this case.

11

As the U.S. Supreme Court recently observed:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011).

Factual determinations made by the state court are also given considerable deference under AEDPA. Within § 2254(d)'s overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision under § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See Lambert, 387 F.3d at 235-39; Lewis v. Horn, 581 F.3d 92, 111 (3d Cir. 2009). In addition, Section 2254(e)(1) applies to all factual determinations made by the state courts, regardless of whether a state court has "adjudicated on the merits" a claim for the purposes of § 2254(d). See, e.g., Lewis, 581 F.3d at 100, citing Fahy v. Horn, 516 F.3d 169, 181 (3d Cir. 2008).

### (b) Claim 2(a)

The United States Supreme Court set the basic standard for competency in Dusky v. United States, 362 U.S. 402 (1960) and Drope v. Missouri, 420 U.S. 162 (1975). See also Pate v. Robinson, 383 U.S. 375, 385 (1966); Godinez v. Moran, 509 U.S. 389, 399-400 (1993); Taylor v. Horn, 504 F.3d

12

416, 430 (3d Cir. 2007). In Dusky, the Court held that to be considered competent, a defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402 (internal quotation marks omitted). Drope repeats that standard, stating that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." 420 U.S. at 171. Moreover, "[a] trial court's failure to inquire into incompetency, *sua sponte*, where there is a reason to doubt a defendant's competency, violates due process because it deprives the defendant of his right to a fair trial." Taylor, 504 F.3d at 433, citing Drope, 420 U.S. at 172; Pate, 383 U.S. at 385-86; see also Hull v. Kyler, 190 F.3d 88, 105-06 (3d Cir. 1999) (the failure to provide adequate procedures to ensure that a defendant is competent deprives a defendant of his constitutional right to a fair trial). "*But barring indicia of incompetence, due process does not require that a competency hearing be held*." Id. (emphasis added), citing Godinez, 509 U.S. at 402 n.13.

The state court denied Petitioner's claim that he was tried while incompetent because it lacked any record support. (CP Dkt. No. 75, Muhammad, No. 232 of 2007, slip op. at 13-14 "there was no evidence of his incompetence, and his involvement in the trial demonstrated otherwise."). The court's adjudication was not "contrary to" or an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court," nor was it based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Petitioner has not directed this Court to any evidence in the record that was before the state court that supports his contention that he was not competent to be tried for the charges at issue here. Instead, he relies upon the fact that he was found to be incompetent in July and August of 2006 during the

13

litigation of unrelated federal and state criminal cases. This Court is well aware of that fact. In disposing of Petitioner's previous federal habeas petition in which he challenged his judgment of sentence for making terroristic threats (Criminal Docket CP-25-CR-000303-2004), the Court explained: "On August 3, 2006, [the state trial court] … took judicial notice of the determination that Petitioner was 'mentally incompetent,' which was made by the Honorable Maurice B. Cohill of the United States District Court for the Western District of Pennsylvania on July 12, 2006, in a separate federal criminal proceeding in which Petitioner was a defendant, U.S.A. v. Muhammad a/k/a Cooper, Criminal Docket No. 05-35 (W.D.Pa.)." Muhammad v. Kannrine, No. 07-22, 2009 WL 922468, *4 (W.D. Pa. 2009).

That Petitioner was found to be incompetent in July and August of 2006, however, does not establish that he was incompetent to be tried in July of 2007, when his trial in this case occurred. In fact, on March 12, 2007, following another competency hearing, Judge Cohill entered an order in Petitioner's federal criminal case in which it was held: "The court finds by a preponderance of the evidence that [Petitioner], has recovered to such an extent that that he is able to understand the nature and consequences of the proceeding against him and to assist properly in his defense." (ECF No. 70 in U.S.A. v. Muhammad a/k/a Cooper, Criminal Docket No. 05-35 (W.D.Pa.)). Upon the finding that Petitioner had regained his competency, Judge Cohill scheduled Petitioner's federal criminal trial, which was conducted in August of 2007, approximately one month after the trial at issue in the instant case. This Court takes judicial notice of the fact that Petitioner was found to have regained his competency by March 2007, and therefore there is no basis whatsoever upon which to grant relief on this claim.

Based upon all of the foregoing, Claim 2(a) should be denied.

14

### (c) Claim 4

As set forth above, Petitioner was convicted on two counts of aggravated assault, three counts of simple assault, and one count of recklessly endangering another person. He contends that he is entitled to habeas relief because there was insufficient evidence to support his convictions.

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze this claim is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir. 1997), quoting Jackson, 443 U.S. at 318-19 (internal citations and quotes omitted). See also Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009).

In rejecting this claim, the state court applied the Pennsylvania equivalent of the Jackson v. Virginia standard. (CP Dkt. No. 75, Muhammad, No. 232 of 2007, slip op. at 5). See also Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). It then reviewed the elements of each crime of which Petitioner was convicted and set forth in detail the evidence at trial that was entered to support each element. (Id. at 9-13). Petitioner has not demonstrated any basis upon which this Court could disturb the state court's decision under AEDPA's deferential standard of review, 28 U.S.C. § 2254(d).

What Petitioner really takes issue with is the jury's (and the trial court's with respect to its verdict on the summary offenses) decision to credit the prosecution's case against him. In reality, his claim is

15

that the verdicts were against the weight of the evidence. A claim that a verdict is against the weight of the evidence is a state law claim that is distinct from a federal due process claim, and it is not a claim that is cognizable in federal habeas corpus. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); see also Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985).

Based upon all of the foregoing, Claim 4 should be denied.

### 4. Claim 5 Is Not Cognizable In Federal Habeas

In Claim 5, Petitioner contends that his sentence was excessive and that the trial court computed it using the wrong PSI score. [See ECF No. 21 at 15-19]. Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review. Unless a habeas petitioner establishes that a state sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is purely a question of state law. See, e.g., Chapman v. United States, 500 U.S. 453, 465 (1991); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir.1984). The allegations that Petitioner's makes here raise only issues of state law that are not cognizable in federal habeas.

Based upon all of the foregoing, Claim 5 should be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a]

certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied. It is further recommended that Respondents' motion to quash [ECF No. 23] be denied and Petitioner's motion in which he seeks to quash Respondents' motion [ECF No. 27] be dismissed as moot.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established

in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

                                              /s/ Susan Paradise Baxter
                                              SUSAN PARADISE BAXTER
                                              United States Magistrate Judge

Dated: August 1, 2011

cc:      The Honorable Sean J. McLaughlin
         United States District Judge